IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMANDA SERRANO**, Individually, and | ) | |
| as Administratrix of the ESTATE OF | ) | |
| BRET P. COONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12cv1678 |
| | ) | **Electronic Filing** |
| **CHESAPEAKE APPALACHIA, LLC**; | ) | |
| **NATIONAL OILWELL VARCO, L.P.**; | ) | |
| **NATIONAL OILWELL VARCO, INC.**; | ) | |
| **NATIONAL SUPPLY COMPANY, INC.**; | ) | |
| **MIDWEST FLEXIBLE HOSE, INC.**; | ) | |
| **EXPRESS ENERGY SERVICES CT,** | ) | |
| **LP**; **EXPRESS ENERGY SERVICES** | ) | |
| **GP, LLC**; **EXPRESS ENERGY** | ) | |
| **SERVICES OPERATING, LP,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff commenced this action in the Court of Common Pleas of Allegheny County seeking redress for the death of Bret P. Cooney ("decedent"), who suffered injuries from an accident in the workplace and subsequently died from those injuries. Defendants removed the action on the basis of diversity jurisdiction. Presently before the court is plaintiff's motion to enforce a subpoena directed to non-party Patterson-UTI ("Patternson"). For the reasons set forth below, the motion will denied and a protective order will be entered upholding Patterson's invocation of the work product and attorney-client privileges. The protective order will be entered without prejudice to plaintiff seeking relief after further discovery based on a specific and particularized showing that a particular document or communication is beyond or outside the scope of the principles and rulings set forth in this opinion.

The decedent was an employee of Patterson. On January 14, 2011, decedent was a member of a drilling team working on site at an oil and natural gas rig. During the course of the operations decedent was struck in the head by a hose and suffered severe injury ("the event"). Decedent died on January 20, 2011.

Patterson contacted its outside counsel, Baker Hostetler LLP, upon learning of the event. Patterson engaged counsel in an effort to obtain legal advice. Attorney Glen Shu thereafter conducted interviews with eyewitnesses and others who had knowledge of or relating to the event. He received correspondence from Patterson's employees. Attorney Shu reduced all of the gathered information into a written "investigation report." The report contains Attorney Shu's "interview summaries" of the eyewitnesses as well as his accounts and/or summaries of communications received from Patterson's non-lawyer employees. It was prepared to provide Patterson with legal assistance.

Patterson thereafter engaged in communications about the event with its insurance (a) carrier, Zurich; (b) administrator, Liberty Mutual; and (c) broker, Willis. These communications involved claim assessment and/or strategy.

Defendant Chesapeake made a tender for indemnity to Patterson. Patterson accepted the tender subject to a reservation of rights. Thereafter, Patterson disclosed communications and information about the event to Chesapeake and defendant "Express Casings." These communications occurred for the purpose of defending against any potential liability from plaintiff's claims.

Plaintiff commenced discovery while the action was in state court. After motions to compel and interaction with Judge Wettick, Patterson complied with various aspects of plaintiff's discovery demands and produced a privilege log. After revisions, Patterson withheld 107 documents as non-discoverable based on the attorney-client or work product privilege. It

2

produced a privilege log identifying the date, author, recipient(s), subject of the communication and the privilege(s) invoked.

Plaintiff served a subpoena on Patterson after the action was removed. Patterson elected to stand on the asserted privileges and the privilege log. The instant motion to enforce followed.

Plaintiff challenges three different categories of the withheld information: the initial investigation report, the communications between Patterson and its carrier/administrator/broker, and the communications and exchange of information between Patterson, Chesapeake and Express Casings. Patterson maintains that all documents and communications withheld are privileged.

More specifically, plaintiff maintains that the initial investigation report was intended to serve as a repository for the statements of eyewitnesses, all of which Patterson filtered through Attorney Shu. The report necessarily must contain raw factual information concerning the event and is the only available source of contemporaneous information about it. Patterson is not a party to this litigation and can never be a party because it is immune from suit under the Pennsylvania Workers' Compensation Act, 77 P. S. § 481(b). A majority of courts have held that non-parties cannot invoke the work-product privilege embodied in Rule 26(b)(3). In addition, it is clear that non-lawyer employees of Patterson sent correspondence to Attorney Shu which must have contained accounts of the event. Such information has to contain raw factual information. Plaintiff thus asserts that the sheltering of such information indicates that the use of Attorney Shu was part of a designed plan to obtain evidence and preclude plaintiff from gaining access to it.

Patterson invokes both privileges as to the report. It argues that Attorney Shu conducted the investigation and wrote the report in his capacity as counsel. The report was based on information he learned from Patterson's employees and its purpose was to provide legal

assistance and counsel regarding the potential legal repercussions from the event.  Thus, from Patterson's perspective the report is protected under the attorney-client privilege.

Patterson further asserts that the report is protected under the work product doctrine. Patterson immediately anticipated litigation upon receiving news of the event.  Attorney Shu prepared the report in his capacity as counsel and for the purpose of rendering legal advice. Patterson has an interest in this litigation that is aligned with defendant Chesapeake due to the acceptance of Chesapeake's tender of indemnity.  Federal district courts in the Middle and Eastern Districts of Pennsylvania have extended work product protection to non-parties under analogous circumstances.

Furthermore, Patterson asserts that the report does not contain any written statements signed or adopted by Patterson employees and it does not possess any such statements.  Nor does the report contain any transcripts or substantially verbatim recitals of witness interviews.  And although the report does contain Attorney Shu's summaries of his interviews of Patterson employees, it is permeated with his thought process, mental impressions and legal theories to a degree that protects the entirety of the report.  Thus, Patterson contends that the entire report is work product and protected from disclosure under the circumstances.

The report and the communications utilized by Attorney Shu in formulating it are protected by the work product doctrine.  The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b), which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless otherwise discoverable and the party shows substantial need for the material and the inability to obtain its substantial equivalent without undue hardship.  Fed. R. Civ. Proc. 26(b)(3).  In the seminal case of <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), the Supreme Court first recognized the doctrine pursuant to the principle that permitting attorneys to

prepare their cases without fear that their work product would be used against their clients advances the adversarial system. Id. at 510-11.

In United States v. Nobles, 422 U.S. 225, 238 (1975), the Supreme Court further opined that the doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Included within this category are trial preparation documents that reflect the fruits of the attorney's endeavors, any compendium of evidence prepared by the attorney and any of the attorney's mental impressions, opinions or theories. Id. at 236-39. Also protected are those materials prepared by an attorney's agent. Id. at 238-39. However, when "relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." Hickman v. Taylor, 329 U.S. 495, 511, (1947).

The work-product doctrine "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir.1990). In contrast, the doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir.1993).

A document is considered to be prepared "in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir.1979). "The work-product immunity is not lost, however, if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation." Lumber v. PPG Indus., Inc., 168 F.R.D. 641, 645 (D. Minn. 1996). Moreover, even if documents were

5

prepared for a different case, work product protection may apply as long as the cases "are closely related in parties or subject matter." Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 309 (D.N.J. 2008).

The party seeking the protection has the burden of proving the doctrine applies. Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir.1982). Once that burden has been met, protected work prepared in anticipation of litigation must be produced only under very limited circumstances and opinion work product is "afforded near absolute protection from discovery." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003). The exception to ordinary work product will be recognized where the party seeking disclosure can demonstrate a substantial need for the material and the inability without undue hardship to obtain the substantial equivalent of it by other means. Fed. R. Civ. P. 26(b)(3).

Patterson is entitled to invoke the work product doctrine. All of the prerequisites for invocation of the protection are present.

Plaintiff's contention that Patterson may not avail itself of the work-product privilege because it is not a party to this litigation is unavailing. Plaintiff correctly notes that Patterson cannot invoke the privilege under Rule 26(b)(3) because by its terms the protection does not apply to third parties. And plaintiff also correctly notes that the majority of courts to have considered that protection have held the Rule only extends to parties. See e.g. Hawkins v. South Plains Intern. Trucks, Inc., 139 F.R.D. 682, 683 (D. Colo. 1991) ("The language of the rule limits protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. All recent case law is in accord.") (citing In re California Public Utilities Commission, 892 F.2d 778, 780 (9th Cir. 1989); Gomez v. City of Nashua, 126 F.R.D. 432, 434 (D.N.H. 1989); Chaney v. Slack, 99 F.R.D. 531, 533 (S.D. Ga.1983); Galambus v. Consolidated Freightways Corp., 64 F.R.D. 468, 473 (N.D. Ind. 1974) and C. Wright & A. Miller, FEDERAL

6

PRACTICE AND PROCEDURE § 2021, at 201–02 ("[D]ocuments prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.").

But a growing number of courts have recognized that the protection afforded by Hickman extends beyond that of the Rule. These courts have utilized or endorsed the approach set forth in In re Student Finance Corp., 2006 WL 3484387 (E.D. Pa. Nov. 29, 2006). There, the court was required to determine whether documents could be obtained through a subpoena served on a non-party private investigator that had investigated a fraudulent scheme at the direction of an insurance carrier. The fraudulent scheme had been perpetrated in the context of student loans for trade schools. The true rate of default on the loans had been distorted by the trade schools' use of false information regarding students' eligibility for and ability to repay the loans. The loans had been both made and purchased by a lender. The lender then sold the loans as asset-backed securities.

After the true state of the loans became known, a significant number of the loans went into default. The lender was involuntarily forced into bankruptcy by its creditors. The carrier had insured a great number of the loans and was the largest creditor of the estate. The carrier's attorneys hired a private investigation firm to gather information in preparation for litigation against the lender and the trade schools.

The trustee commenced an adversary proceeding against the carrier. The carrier sued the lender and several of the trade schools. The carrier and trustee eventually reached a settlement agreement that was approved by the bankruptcy court. The agreement encompassed a significant payment by the carrier to the estate with an allowance of a sizable administrative claim to be satisfied by future proceeds generated from the estate's claims against third parties. Under the agreement the trustee agreed to pursue litigation against the trade schools and others involved

with the lender in order to recover money for the estate and the carrier retained the right to approve any settlement or to pursue litigation that the estate declined to pursue.

The trustee brought an adversary proceeding against one of the trade schools to recover allegedly fraudulent transfers received from the lender. The trade school served a subpoena on the investigation firm seeking the production of documents pertaining to its investigation of the trade school and others. The trade school filed a motion to enforce the subpoena and the investigation firm, the lawyers who had hired it and the carrier opposed the motion and cross-moved for a protective order. Id. at *1-3.

The court considered whether non-parties in the position of the carrier, the investigation firm and the attorneys could "assert the attorney work product privilege," and if so, whether the investigation report and related materials were non-discoverable work product. After a comprehensive review of the history of the work product doctrine commencing with Hickman, the limited implementation of the doctrine in Rule 26(b)(3), the case law that had implicitly or explicitly viewed Rule 26(b)(3) as the exclusive source of authority for protecting work product from discovery, the "handful of decisions" that had permitted third parties to invoke the privilege, and the sources of authority bearing on the issue, the court held that the non-parties could invoke the privilege where the circumstances implicated "all the purposes for the privilege articulated in Hickman: 'preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from free-loading off their adversaries' preparation, and preventing disruption of ongoing litigation.'" Id. at *12 (quoting Hickman, 329 U.S. at 511). This showing was satisfied under the circumstances. Id.

The court also determined that the subpoena sought materials within the scope of the doctrine. The investigative file had been "prepared by or on behalf of attorneys in anticipation of litigation." Id. (quoting Westinghouse, 951 F.2d at 1428). The doctrine "extends to material

prepared in anticipation of litigation by an attorney's 'investigators and other agents.'" <u>Id.</u>

(quoting <u>Nobles,</u> 422 U.S. at 238.   And the fact that the material was prepared in anticipation of

different  litigation did not remove it from the scope of doctrine because such material "will still

be protected as work product if the anticipated litigation was related to the proceedings in which

the material is to be produced." <u>Id.</u> (citing <u>In re Grand Jury Proceedings,</u> 604 F.3d 798, 803 (3d

Cir.1979) (upholding work product protection to material prepared in anticipation of related

litigation).  After considering the contents of the investigative file, the court barred disclosure to

all of its substantive parts through the issuance of a protective order.  <u>Id.</u> at *16-17.

The court drew on three sources for its authority to issue the protective order: the

authority in Rule 45(c)(3)(A)(iii) for a court to quash or modify a subpoena issued under its own

authority; the authority in Rule 26(c) to issue protective orders for "good cause shown;" and the

settled understanding that <u>Hickman</u> "itself provides authority to protect work product outside the

terms of Rule 23(b)(6), whether as to intangible work product or work product produced by third

parties." <u>Id.</u> at *10-11 (citing <u>Abdell v. City of New York,</u> No. 05 Civ. 8453, 2006 WL

2664313, *3 (S.D. N.Y. Sept. 14, 2006) and Wright & Miller, 8 FEDERAL PRACTICE &

PROCEDURE § 2024 at 355 n. 17 (the position that <u>Hickman</u> authorizes protection of third party

work product "has much to commend itself given the other areas of incomplete codification in

Rule 26(b)(3)"); <u>accord</u> <u>Sporck v. Peil,</u> 759 F.2d 312, 316 (3d Cir.1985) ("The work product

doctrine as articulated in <u>Hickman</u> has been partially codified in Federal Rule of Civil Procedure

26(b)(3)."); <u>In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,</u> 318 F.3d

379, 383 (2d Cir. 2003) (recognizing that the work-product doctrine articulated in <u>Hickman</u>

extends beyond the scope of Rule 26(b)(3)).  It also noted that "[a]lthough Rule 26(b)(3) is

expressly limited to 'documents and other tangible things,' federal courts have not hesitated to

extend the privilege to oral statements that embody an attorney's mental impressions or work

product." Id. at *7 (citing In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003) ("It is clear from Hickman that work product protection extends to both tangible and intangible work product."); United States v. One Tract of Real Property, 95 F.3d 422, 428 n. 10 (6th Cir. 1996) ("When applying the work product privilege to . . . nontangible information, the principles enunciated in Hickman apply, as opposed to Rule 26(b)(3) of the Federal Rules of Civil Procedure, which applies only to 'documents and tangible things.'"); Alexander v. F.B.I., 192 F.R.D. 12, 17 (D.D.C. 2000) (same); 8 FEDERAL PRACTICE & PROCEDURE § 2024 at 337).

A growing number of courts have followed In re Student Finance Corp. In Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 699 (N.D. Ga. 2007), the court employed the same analysis and held that non-party United Parcel Service, Inc., could invoke the work product privilege to shelter documents relating to UPS' investigation of the "death of Raymond Carnes, a UPS employee who was killed when a truck owned by Defendant Crete Carrier ("Crete") and driven by Defendant Kunz collided with a UPS vehicle he was repairing on the side of the road." Id. at 696. UPS had taken photographs of the scene, interviewed the truck driver and prepared an investigation report immediately following the employee's death. These documents were prepared in anticipation of litigation by or for UPS. In addition, Crete had indicated it would seek an apportionment of the fault of UPS from the jury, thereby creating circumstances which had the potential to make UPS a future party to the litigation. Id. at 699.

In ASARCO, LLC v. Americas Mining Corp., 2007 WL 3504774 (D. Idaho 2007), the court observed the emerging trend to extend work product protection to subsequent litigation where the cases are "closely related." Id. at *4. It drew on the authority existing in Rule 45(c)(3)(A)(iii) and Rule 26(c) to issue a protective order quashing a subpoena seeking documents from a non-party that had the potential to become entangled in the underlying bankruptcy case "on several levels." Id. at *9.

10

In Jean v. City of New York, 2010 WL 148420 (E.D. N.Y. Jan. 12, 2010), the court noted that "several courts have extended work-product protection to non-parties when that vindicated the purposes underlying the doctrine." Id. at *2 (collecting cases). It applied the principles to deny a civil rights plaintiff's motion to compel subpoenas, written notes and medical records from a non-party district attorney based on the potential of further litigation between the two. Id. at *3.

Here, Patterson is within the scope of the work product privilege established in Hickman and an extension of it is warranted under the circumstances. First, Chesapeake is alleged to be the entity that owned, operated and controlled the drilling rig where the event occurred. Patterson had the potential to indemnify Chesapeake for liability against it arising out of the event. Upon learning of the event Patterson immediately retained outside counsel. It was outside counsel that gathered the information, prepared the report and was involved in subsequent efforts pertaining to the availability of insurance coverage and formulating defense analyses and strategies. Patterson's undertakings when viewed against the backdrop of it having the potential to indemnify a party centrally involved in the drilling operations where the event occurred firmly indicates that Patterson prepared the report and the related materials that followed in anticipation of litigation.

Second, the report and related communications are or encompass materials prepared by Patterson's counsel. These materials were prepared as part of Attorney Shu's undertakings to represent his client in the face of legal proceedings on multiple fronts. Thus, they are or relay attorney work product.

Third, the potential for Patterson to have to indemnify the rig operator for its liability to plaintiff gives Patterson a sufficient nexus with the instant litigation. Patterson's potential

11

liability is within the ambit of "having the potential" to become involved in "closely related litigation" and/or becoming a potential party to an aspect of the litigation.

Fourth, extending protection to Patterson serves the purposes of the work product doctrine. Preventing discovery will have a salutary effect on attorneys maintaining confidence that their ability to formulate and record legal theories and prepare their cases will not be used to the detriment of their clients. It will also encourage all parties to act diligently and independently in obtaining information and preparing their own cases. And it has the potential to prevent the development of side issues and collateral undertakings that would flow from the disclosure of such information, which in turn would create the potential to disrupt and further delay the instant litigation.

Finally, preventing disclosure is well within the court's authority under Rule 45(c)(3)(A)(iii) and Rule 26(c) to issue protective orders upon a showing of good cause. The subpoena is issued pursuant to this court's authority under Rule 45 and the record supports a finding of good cause as explained above. Accordingly, the report and the related communications involving its content and/or the application of the assessments and strategies advanced by Attorney Shu are cloaked with work product protection.

The report and the related communications involving its content and/or the application of the assessments and strategies advanced by Attorney Shu also are protected by the attorney-client privilege. A federal court sitting in a diversity must look to state law for the applicable legal principles on issues of privilege. See Fed. R. Evid. 501; United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 965 (3d Cir. 1988). The Pennsylvania rule on attorney-client privilege has been codified since 1887. Nationwide Mutual Ins. Co. v. Fleming, 992 A.2d 65, 68 (Pa. 2010) (Justice Eakin) (affirming Superior Court by equally divided Court); accord Upjohn v. United States, 449 U.S. 383, 389 (1981) (The attorney-client privilege is "one of the oldest of the

privileges for confidential communications known to the common law.").  The statute in its current form provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. C. S. § 5928.  "[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice."  Gillard v. AIG Insurance Co., 15 A.3d 44, 59 (Pa. 2011).

> The showing necessary to establish the privilege is settled:

>> (1) (When) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

In re Grand Jury, 603 F.2d 469, 474 (3d Cir.1979) (citing J. Wigmore, EVIDENCE § 2292 at 554 (1961)); see also In re Impounded, 241 F.3d 308, 316 n. 6 (3d Cir. 2001).  "The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege."  In re Grand Jury, 603 F.2d at 474 (citing among other cases United States v. Landof, 591 F.2d 36, 38 (9th Cir.1978)).

The attorney-client privilege serves laudable purposes and thus is "[w]orthy of maximum protection."  Haines v. Liggett Group Inc., 975 F.2d 81, 90 (3d Cir.1992).  Nevertheless, the privilege obstructs the truth-finding process and is to be construed narrowly.  Westinghouse Elec. Corp., 951 F.2d at 1423.  The privilege "protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege."  Id. (citing Fisher v. United States, 425 U.S. 391, 403 (1976)).

"In Pennsylvania, the attorney-client privilege is an absolute privilege; it is not a limited privilege that is inapplicable whenever a court determines that the case cannot be fairly decided if the privilege is invoked." <u>Mueller v. Nationwide Mutual Ins. Co.</u>, 31 Pa. D. & C.4th 23, 1996 WL 910155, *31 (Ct. of Com. Pleas of Allegheny County, May 22, 1996) (Wettick, J.). Nevertheless, "[p]rotection under attorney-client privilege is subject to limits, exceptions, and waiver." <u>Nationwide Mut. Ins. Co. v. Fleming</u>, 924 A.2d 1259, 1265 (Pa. Super. 2007).

A client can waive the attorney-client privilege in a number of ways. One is by disclosing a protected communication to a third party. <u>Id.</u> (citing <u>Loutzenhiser v. Doddo</u>, 260 A.2d 745, 748 (Pa. 1970); <u>Joe v. Prison Health Services, Inc.</u>, 782 A.2d 24, 31 (Pa. Commw. Ct. 2001)). Such a disclosure "has long been considered inconsistent with an assertion of the privilege." <u>Westinghouse Elec. Corp.</u>, 951 F.2d at 1424 (citing <u>United States v. AT & T</u>, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

Patterson hired Attorney Shu to provide legal assistance and advice concerning its exposure from the event. Attorney Shu communicated with Patterson's employees in an effort to gather pertinent information to discharge his duties competently. The communications from Patterson's employees needed to gather that information as well as the advice, strategies and recommendations Attorney Shu imparted through the report all fall well within the scope and purpose of the privilege.

Plaintiff's assertions to the contrary are specious. While plaintiff claims that the report was created to serve as a repository for all firsthand accounts of the event and to shelter such information from plaintiff, there is not a scintilla of evidence to support this proposition. Patterson was entitled to gather the information available to it through counsel and formulate an appropriate course of action in conjunction therewith. It did not have an obligation to gather the

information in a manner that would make it directly available to plaintiff. To the contrary, the privileges operate to foreclose such disclosures absent extenuating circumstances.

Moreover, Patterson was entitled to have its employees communicate with Attorney Shu for the purpose of obtaining legal advice. Such communications do not have to be limited to firsthand accounts of the event. Attorney Shu was entitled to elicit various forms of information from Patterson's personnel to assist him in rendering informed and competent advice.

Plaintiff's contention that because the communications came from Patterson's non-lawyer employees and occurred after the event, they necessarily had to convey discoverable raw factual data about the event misses the point. It is certainly true that all underlying information and data gathered by Patterson as part of its undertaking is discoverable. In this regard "[t]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." Upjohn Co. v. United States, 449 U.S. 383, 395-96, (1981) (quoting Philadelphia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962)).

In other words, communications made by Patterson's employees to Attorney Shu for the purposes of gaining legal advice or formulating legal strategy are protected from disclosure. Plaintiff cannot compel disclosure of such communications. Nevertheless, plaintiff is free to gather the factual information from Patterson and the other defendants through myriad discovery devises and neither Patterson nor any other defendant can shelter the actual factual information known or imparted to them. But it is plaintiff's burden to employ those devises and frame the

inquires in a manner that nets the  factual information without intruding into the actual privileged documents and communications.

Plaintiff's contention that Patterson's communications with its carrier and insurance agents in an effort to obtain and administer insurance coverage waived the privileges equally is misplaced.  As previously noted, a client can waive the attorney-client privilege by disclosing a protected communication to a third party.  Nationwide Mut. Ins. Co., 924 A.2d at 1265 (citing Loutzenhiser v. Doddo, 260 A.2d 745, 748 (Pa. 1970); Joe v. Prison Health Services, Inc., 782 A.2d 24, 31 (Pa. Commw. Ct. 2001.  An exception to this rule is recognized where the disclosure to the third party is necessary to receive informed legal advice.  Westinghouse Elec. Corp., 951 F.2d at 1423.  Accordingly, the "courts have held that the client may allow disclosure to an 'agent' assisting the attorney in giving legal advice to the client without waiving the privilege." Westinghouse, 951 F.2d at 1423; accord United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961) (because "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others," the attorney-client "'privilege must include all the persons who act as the attorney's agents.'"  Id. at 921 (quoting 8 Wigmore, EVIDENCE, § 2301).

The protection of the attorney-client privilege involving communications regarding the availability of insurance can extend to those agents who are necessary to effectuating the representation.  Levy v. Senate, 34 A.3d 243,  254-55 (Pa. Commw. Ct. 2011), aff'd in part and rev'd in part on other grounds, 64 A.3d 361 (Pa. 2013).  These can include communications between an insured and an insurance carrier and their respective agents where the disclosures to the agents are in furtherance of the purpose of the privilege.  Id.[1]

---

[1] The Commonwealth Court recognized the Restatement (Third) of the Law Governing Lawyers

Communications between an insured and its carrier which include communications with the insured's insurance administrator and broker fall within the permissible use of agents. Such communications are within the privilege to the extent they involve communications from the client to the carrier or the carrier to the client for the purpose of obtaining legal representation and advice, effectuating the representation, and related matters such as options regarding strategy and settlement. Compare id.; accord Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 600, 606 (D. Mass. 1992) (insured did not waive work product privilege by disclosing documents and communications protected by the privilege to its insurance brokers.).

---

as being consistent with Pennsylvania law in this area. The court observed:

> The topic is generally addressed by Section 70 of the Restatement, titled "Attorney–Client Privilege-'Privileged Persons.'" Privileged persons include agents of either the client or the lawyer who facilitate communications between them and agents of the lawyer who facilitate the representation. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §§ 70 (2000). Comment e provides in part that "If the third person is an agent for the purpose of the privilege, communications through or in the presence of that person are privileged; if the third person is not an agent, then communications are not in confidence ... and are not privileged." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. e (2000).
>
> Comment f addresses a client's agent for communications. One such agent is described as follows (with emphasis added):
>
>> The privilege applies to communications to and from the client disclosed to persons who hire the lawyer as an incident of the lawyer's engagement. Thus, the privilege covers communications by a client-insured to an insurance-company investigator who is to convey the facts to the client's lawyer designated by the insurer, as well as communications from the lawyer for the insured to the insurer in providing a progress report or discussing litigation strategy or settlement. Such situations must be distinguished from communications by an insured to an insurance investigator who will report to the company, to which the privilege does not apply.
>
> RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. f (2000).

Levy, 34 A.3d at 254-55.

Patterson identifies and explains the communications as being related to "claim assessment and/or strategy" meaning that "they relate to the evaluation of strengths and weaknesses of a claim of defense or respecting strategy or tactics."  Brief in Opposition (Doc. No. 52) at ¶ 24.  Such communications between agents necessary to procure and/or provide the representation and advice in a manner necessary to maintain the availability of coverage and/or effectuate strategy and tactics of counsel in that setting fall within the attorney-client privilege.

Patterson also has met it burden to invoke the work product protection as to these communications.  Disclosure of work product to a third party does not necessarily negate the ability to claim the evidentiary privilege that attaches to work product.  Under federal law a party may continue to assert the protections of the work product doctrine only when the disclosure to a third party furthers the doctrine's underlying goal.  Westinghouse Elec. Corp., 951 F.2d at 1429.  Consistent with this, Rule 26(b)(3) expressly extends work product to a party's representative – including the "party's attorney, consultant, surety, indemnitor, insured, or agent."  Fed. R. Civ. P. 26(b)(3).

Patterson's obligation to indemnify Chesapeake and its potential to become a party to the litigation sufficiently place it within the protections of the work product doctrine.  As part of that protection it is entitled to utilize agents who are necessary to procure and/or provide representation in a manner that is needed to maintain and administer the availability of insurance coverage.  The use of such agents  is consistent with and advances the purpose of the work product privilege.

Finally, plaintiff's challenges to Patterson's communications with Chesapeake and Express Casings are wide of the mark.  These communications fall within the limited privilege attacking to these parties' common undertaking to defend against the liability sought to be established by plaintiff.

There are two caveats to the attorney-client privilege that occasionally arise where parties share or receive attorney-client communications and work product in a setting that involves a common adversary: the "common interest" (also known as "community of interest") and the "co-client" doctrines. Camico Mutual Insurance Co. v. Heffler, Radetich & Saitta, LLP, 2013 WL 315716, *1 (E.D. Pa. 2013).[2] When applicable, these doctrines permit a limited or selective disclosure of privileged communications among all co-client or common-interest parties. The principles and boundaries of these doctrines remain unsettled under Pennsylvania law. Id.

The United States Court of Appeals for the Third Circuit examined these doctrines in In re Teleglobe Communications Corp., 493 F.3d 345 (3d Cir. 2007). There, the court undertook a "contemplative analysis" of the doctrines in a case predicated on Delaware law. Camico, 2013 WL 315716 at *1. In re Teleglobe has become a leading opinion in these areas and provides persuasive authority as to Pennsylvania law. Id.

The "common interest" exception can arise where separate clients retain different attorneys who then share information with each other pursuant to a common legal interest. Id. at *2. This often occurs where co-defendants are required to retain separate counsel to avoid potential conflicts over contingent or subsidiary issues that might arise in the case. Id. Where the information is shared pursuant to this common interest "it is not privileged as between those clients." Id. (citing Teleglobe, 493 F.3d at 365-66). It does remain privileged as to all others. Teleglobe, 493 F.3d at 364. The consent of all clients generally is required to waive privileged communications generated from the shared attorney-client communications. Id.

"A party asserting a privilege bears the burden of proving the applicability of the privilege." Matter of Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126

---

[2] These doctrines can arise in other setting as well. The "co-client" doctrine is not implicated by the instant record.

(3d Cir. 1986) (citing <u>Grand Jury Empanelled February 14, 1978</u>, 603 F.2d 469, 474 (3d Cir.1979)).  In order to invoke the common interest exception three factors must be present: 1) the communications must have been made in the course of a joint defense effort; 2) the statements were made in furtherance of that effort; and 3) the privilege has not been waived.  <u>Id.</u>

"Pennsylvania state courts have held that under the 'common interest' exception, separate counsel for different clients is required." <u>Camico</u>, 2013 WL 315716 at *2 (citing <u>In re Condemnation by City of Philadelphia in 16.2626 Acre Area</u>, 981 A.2d 391, 397–98 (Pa. Commw. Ct. 2009)).  The clients must be parties to litigation or involved in similar or related legal proceedings that implicate essentially the same interest against a common adversary.  <u>In re Condemnation by City of Philadelphia in 16.2626 Acre Area</u>, 981 A.2d at 397.  "[A] shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege." <u>Id.</u> at 398 (citing <u>Katz v. AT & T Corp.</u>, 191 F. R. D. 433 (E.D. Pa. 2000) and <u>Executive Risk Indemnity, Inc. v. Cigna Corporation</u>, 81 Pa. D & C 4th 410 (2006)).  The exception can extend to potential parties where each shares a sufficient common interest against a common adversary.  <u>United States v. LeCroy</u>, 348 F. Supp.2d 375, 381 (E.D. Pa. 2004) (citing <u>Russell v. General Electric</u>, 149 F.R.D. 578 (N.D. Ill. 1993) (the joint defense privilege can apply to parties or potential parties sharing a common interest in the outcome of a particular claim).

Here, Patterson is within the protections accorded to a party under the work product doctrine.  In addition,  Patterson's interests are aligned with Chesapeake.  Patterson's potential obligation to indemnify Chesapeake for any liability plaintiff establishes against it aligns Patterson's interests with Chesapeake and those defendants' whose liability would lead back to liability against or otherwise implicate the legal duties of Chesapeake.  For the purposes of confronting and mounting a defense against plaintiff's claims, Patterson's interests are one and

the same with these defendants. Thus, as between Patterson and these defendants the common interest requirement is satisfied.

It follows that as long as the communications were made in the course of these parties' common interest and they were undertaken in furtherance of that joint undertaking, they continue to be protected by the privileges. Such communications are consistent with and in furtherance of the purposes underlying each privilege. Consequently, they continue to enjoy the protection afforded to the respective privileges.

Plaintiff has failed make any showing that the substantial equivalent of the discoverable factual information within the documents and communications sought to be subpoenaed cannot be obtained without undue hardship. The record does not contain any grounds to support these requirements. To the contrary, it is evident that the employees within the control of Patterson have been made available to plaintiff for deposition and the information regarding the location of those individuals who are no longer employees has been proffered as well. Plaintiff also has other avenues and forms of discovery available to generate the discoverable information within the privileged materials. Consequently, plaintiff's motion to enforce subpoena directed to non-party Patterson will be denied.

Plaintiff has sought to compel compliance with the subpoena based on generalized assertions that pertain to entire categories of documents and communications. Each of these contentions has been determined to fall short of warranting the relief requested for a number of reasons. Plaintiff has not made arguments about any particular document or communication being beyond or outside the principles and rulings set forth above that warrant upholding the privileges. Similarly, Patterson only has responded to plaintiff's generalized assertions and has not set forth more particular information about specific documents or individuals/communications. Its privilege log contains only the thinnest of information and no

additional affidavits are supplied. Accordingly, in order to assure that any particular document or communication is not beyond or outside the scope of these principles and rulings (for example, that a particular individual was not (1) an agent for the purpose of procuring and/or providing representation and advice in a manner necessary to obtain or administer the availability of coverage or (2) an agent of an entity whose liability would lead back to liability against or otherwise implicate the legal duties of Chesapeake, (3) and so forth), the order denying the motion will be entered without prejudice to plaintiff seeking relief after further discovery based on a specific and particularized showing that a particular document or communication is beyond or outside the scope of the principles and rulings set forth in this opinion.[3]

Date: March 6, 2014

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Michael A. Murphy, Esquire
       Michael P. Leahey, Esquire
       J. Eric Barchiesi, Esquire
       Daniel R. Michelmore, Esquire
       Mark L. Reilly, Esquire
       Ralph M. Monico, Esquire
       John A. Bass, Esquire
       Mark Blondman, Esquire

       (*Via CM/ECF Electronic Mail*)

---

[3] Of course, any subsequent motion which is in actuality nothing more than a motion for reconsideration of these principles and rulings summarily will be denied.